(94 Misc. Rep. 479)

### VALESH v. PRINCE.

(Supreme Court, Special Term, New York County. March, 1916.)

LIBEL AND SLANDER ☞38(1)—PRIVILEGE—JUDICIAL OPINION.

A judicial opinion, in which all the matters discussed were pertinent and material to the action, is entitled to absolute privilege within the law of libel.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 117, 123; Dec. Dig. ☞38(1).]

Action by Eva M. Valesh against Leopold Prince. Demurrer to complaint sustained.

Arthur J. Westermayr, of New York City, for plaintiff.
Defendant, pro se.

COHALAN, J. Defendant interposes a demurrer to the complaint in an action brought to recover damages for an alleged libel. The defendant is a judge of the Municipal Court of the City of New York, and it is alleged in the complaint that while sitting in the performance of his judicial duties he handed down an opinion in which there was contained certain defamatory matter concerning the plaintiff, all to her damage in the sum of $50,000. It is conceded that the statements alleged to be libelous were written by the judge in the exercise of his judicial functions. It would seem, therefore, that these statements were absolutely privileged, irrespective even of allegations charging malice, truth, or relevancy. The rule of absolute privilege with respect to judicial officers has its foundation in the earliest principles of the

common law. These principles were expressed in the case of Yates v. Lansing, 5 Johns. 382:

"The doctrine which holds a judge exempt from a civil suit or indictment, for any act done, or omitted to be done by him, sitting as judge, has a deep root in the common law. It is to be found in the earliest judicial records, and it has been steadily maintained by an undisturbed current of decisions in the English courts, amidst every change of policy, and through every revolution of their government. A short view of the cases will teach us to admire the wisdom of our forefathers, and to revere a principle on which rests the independence of the administration of justice. Juvat accedere fontes atque haurire."

In concluding his opinion in that case, Chancellor Kent further said:

"No man can foresee the disastrous consequences of a precedent in favor of such a suit. Whenever we subject the established courts of the land to the degradation of private prosecution, we subdue their independence, and destroy their authority. Instead of being venerable before the public, they become contemptible, and we thereby embolden the licentious to trample upon everything sacred in society, and to overturn those institutions which have hitherto been deemed the best guardians of civil liberty."

An examination of the authorities in this state as well as in other states throughout the country shows that this principle is firmly imbedded in the jurisprudence of all of our courts. Lange v. Benedict, 73 N. Y. 12, 29 Am. Rep. 80; McLaughlin v. Cowley, 127 Mass. 316; Bradley v. Fisher, 13 Wall. 351, 20 L. Ed. 646; Maulsby v. Reifsnider, 69 Md. 143, 14 Atl. 505; Hart v. Oppenheimer, N. Y. Law J. April 7, 1913. An examination of the subject-matter of the alleged libel shows that the matters discussed by the defendant were pertinent and material to the action upon which the opinion was written. It is my view that the doctrine of absolute privilege in affording protection to justices of our courts is based upon reason and a sound public policy. It is of supreme importance in the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without intimidation or the fear of being liable to prosecution in a civil action. The demurrer is sustained, with costs.

Demurrer sustained, with costs.